Darryl **SIEBERT**, Petitioner,

v.

Andrew **JACKSON**, Respondent.

No. 00–CV–73584–DT.

United States District Court, E.D. Michigan, Southern Division.

Feb. 13, 2002.

Darryl Siebert, Ypsilanti, MI, pro se.

Laura G. Moody, Michigan Dept. of Atty. General, Habeas Corpus Div., Lansing, MI, Vincent J. Leone, Michigan Department of Attorney, General Habeas Corpus Division, Lansing, MI, for Respondent.

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

ROBERTS, District Judge.

This matter is pending before the Court on a *pro se* habeas corpus petition filed by Darryl Siebert ("Petitioner"). The Court has concluded for the following reasons that the petition must be denied.

### I. *Background*

In 1979, Petitioner was charged with two counts of first-degree murder and one count of felony firearm. On November 5, 1979, Petitioner pleaded guilty in case number 79–6909 to one count of second-degree murder, MICH. COMP. LAWS § 750.317. Petitioner then pleaded guilty in case number 79–7119 to one count of second-degree murder and one count of felony firearm, MICH. COMP. LAWS § 750.227b. In return, the prosecutor dismissed the first-degree murder charges and a charge of breaking and entering in a third unrelated case. On November 15, 1979, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction, to be followed by concurrent terms of life imprisonment for the two murders.

The Michigan Court of Appeals affirmed Petitioner's murder convictions, but remanded the case for further proceedings on the felony firearm conviction. *See People v. Siebert*, No. 51564 (Mich.Ct.App. Nov. 19, 1981). On December 12, 1981, the trial court vacated Petitioner's felony firearm conviction. The Michigan Supreme Court denied Petitioner's subsequent request for leave to appeal or other relief. *See People v. Siebert*, No. 68427 (Mich.Sup.Ct. June 7, 1982).

In 1991, Petitioner filed an unsuccessful motion for new trial. In 1995, Petitioner filed a motion for relief from judgment, which the trial court denied because Petitioner had not met the stringent standard of Michigan Court Rule 6.508. Petitioner raised the pending claims in an appeal from the trial court's order denying his second post-conviction motion. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Siebert*, No. 214562 (Mich.Ct.App. Apr. 21, 1999); *People v. Siebert*, 603 N.W.2d 643 (Mich.Sup.Ct. 1999).

On August 9, 2000, Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254. The petition alleges that: (1) Petitioner was sentenced on the basis of inaccurate information in the pre-sentence report; (2) the plea was involuntary because Petitioner did not understand the nature of the charges against him; (3) Petitioner was deprived of the effective assistance of trial counsel; (4) Petitioner was deprived of the effective assistance of appellate counsel; and (5) the procedural rule employed by the state courts does not apply to Petitioner because the rule did not become effective until after Petitioner's conviction and sentence. Respondent urges the Court to dismiss the petition on the grounds that the first four claims lack merit and the fifth claim is moot.

### II. *Discussion*

State prisoners are entitled to habeas relief only if they can show that the state court's adjudication of their claims on the merits—

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ The state courts did not adjudicate Petitioner's claims on the merits. Therefore, this Court will "conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000), *cert. denied*, 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001). This independent review "remains deferential" to the state court's decision that the petitioner was not entitled to relief. *Id.*

## A. *The Accuracy of the Pre-sentence Report*

■ Petitioner alleges that he was denied his constitutional right to due process because his pre-sentence report made no mention of him being treated for mental illness. Petitioner claims that, after the Michigan Department of Corrections took custody of him, a clinical psychologist reported that he was mentally retarded and illiterate and that he had spent much of his life in mental institutions. Petitioner alleges that, if this information had been submitted to the trial court, the court likely would have ordered a competency hearing to determine whether Petitioner was capable of comprehending the nature of the charges against him.

■ Petitioner had a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)); *see Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (stating that reliance on "extensively and materially false" information, which the prisoner had no opportunity to correct violates due process of law). To prevail on his claim, Petitioner must demonstrate that the disputed information was materially false and that the trial court relied on the information. *Collins v. Buchkoe*, 493 F.2d 343, 345–46 (6th Cir.1974).

Clinical psychologist Edward J. Kalmanek opined in a report dated November 28, 1979, that Petitioner was mildly retarded, but not seriously mentally ill. Kalmanek noted in his report that Petitioner claimed to have a long history of being institutionalized in a training school for boys, in psychiatric hospitals, and in group homes. *See* Michigan Supreme Court No. 114639, Application for Leave to Appeal, Exhibit A.

Petitioner's pre-sentence report does not mention anything about mental retardation. It does state that Petitioner's schooling consisted of special education in the public school system and that Petitioner described himself as a slow learner. The report also states that Petitioner had an extensive juvenile record, which resulted in time spent at a training school and a youth home. According to the probation officer who drafted the report, Petitioner denied ever having any mental or emotional problems. *See id.*, Exhibit B.

At the plea, Petitioner informed the trial court of his limited schooling and special education. *See* Tr. of Plea, at 6. He subsequently provided an intelligible factual basis for his plea, and he responded intelligently to the trial court's questions.

At the sentencing, defense counsel noted that the trial court had read the pre-sen-

tence report. *See* Tr. of Sentencing, at 2. Petitioner said nothing about himself or his past when given the opportunity to speak before the sentence was imposed. *Id.* at 3.

In summary, the trial court apparently was aware of Petitioner's limitations. Petitioner has not shown that the trial court relied on materially false information concerning his background or competency to plead guilty. Accordingly, the state court's denial of relief did not result in a decision that was contrary to federal law, an unreasonable application of clearly established law, or an unreasonable determination of the facts. Petitioner has no right to habeas relief on the basis of his first claim. 28 U.S.C. § 2254(d).

### B. *Voluntariness of the Plea*

■■■ The second claim alleges that the guilty plea was involuntary because Petitioner was unaware of the nature of the charges against him and unable to understand the elements of the charged offense. A plea is invalid if the defendant lacks adequate notice of the nature of the charges against him, *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), or if neither the defendant nor his attorney understood the essential elements of the crime charged, *Bousley v. United States,* 523 U.S. 614, 618–19, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Because a plea is a waiver of the right to trial, it must be "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

When the trial court asked Petitioner if he was given an opportunity to discuss this case with his attorney, Petitioner responded, "I didn't really—Yea. Yea." Tr. of Plea, at 8. Although the response is somewhat ambiguous, Petitioner subsequently admitted that he had reviewed the guilty plea forms with his attorney. *Id.* at 9. Petitioner then informed the trial court that he understood the rights and defenses he was waiving by pleading guilty. He also claimed to understand that the maximum penalty to which he was subjecting himself was any number of years, up to life imprisonment. *Id.* at 9–10.

Although most of Petitioner's responses to the trial court's questions were simply "yes" or "no,"

> [t]here is no requirement that in order to rely on a defendant's answers in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple "Yes, your Honor" is sufficient to bind a defendant to its consequences. *Cf. Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

*United States v. Walker,* 160 F.3d 1078, 1096 (6th Cir.1998).

Moreover, Petitioner gave a factual description of the crimes in his own words, and he responded appropriately to the court's questions about aiding and abetting. Petitioner asserted that he was pleading guilty because he was guilty and that he had not been forced to plead guilty or promised leniency if he pleaded guilty. *See* Tr. of Plea, at 8–9, 12–22.

The trial court did not explain the elements of second-degree murder to Petitioner. However, the court did ask specific questions, which addressed the elements of the offenses. See id. at 12–22. The alleged failure to explain the elements of the offense of murder under Michigan law

> does not compel a finding that [Petitioner] lacked knowledge of the true nature or substance of the charges to which he pleaded guilty. In *Henderson v. Morgan,* [426 U.S. 637, 96 S.Ct. 2253, 49

L.Ed.2d 108 (1976)], the Supreme Court stated:

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

426 U.S. at 647, 96 S.Ct. at 2258. Accordingly, under *Henderson*, a defendant should be presumed to have been informed adequately by his counsel of the charge to which he pleaded guilty even when the record is devoid of an explanation of the charge by the judge or of a representation by defense counsel that the nature of the charge has been explained to the defendant. *Berry v. Mintzes*, 726 F.2d 1142, 1147 (6th Cir.1984).

Petitioner nevertheless argues that the trial court recognized his inability to understand the nature of the charges when the court said at sentencing:

> Mr. Siebert, while you are in custody, I hope that you will do whatever you can to straighten your life around *in terms of understanding the nature of the offenses for which you stand convicted* and also to gain a greater appreciation for the question of life and liberty.

Tr. of Sentencing, at 4 (emphasis added). The context of the italicized comment suggests that the trial court was expressing its hope that, some day, Petitioner would appreciate the severity of the crimes for which he had been convicted and sentenced.

Petitioner has not presented sufficient evidence to establish that he did not understand the charges against him or the essential elements of the offenses. Accordingly, the state court's rejection of Petitioner's claim did not result in a decision that was contrary to federal law, an unreasonable application of clearly established law, or an unreasonable determination of the facts. Petitioner has no right to habeas relief on the basis of his second claim.

### C. *The Assistance of Trial Counsel*

Petitioner alleges next that he was denied his constitutional right to the effective assistance of trial counsel.

#### 1. *Before the Plea*

Petitioner alleges that his attorney: did not perform a pretrial investigation; waived the preliminary examination; did not request a psychological evaluation to determine Petitioner's mental capacity to understand the nature of the charges against him; and advised him to waive his preliminary examination without informing him of his constitutional right to confront his accusers to determine whether he possessed the requisite intent. Petitioner contends that, if defense counsel had conducted a pretrial investigation, he would have recognized that Petitioner could not comprehend the charges against him or that Petitioner lacked the capacity to form the requisite intent for first-degree murder. In addition, Petitioner believes that his attorney would have realized that the actual perpetrator in one of the cases was listed as a witness, not a co-defendant.

▆▆▆ To the extent that Petitioner is raising claims about the deprivation of constitutional rights that occurred before his guilty plea, his claims are foreclosed by his guilty plea. *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Simply stated, "[a] voluntary and

unconditional guilty plea waives all nonjurisdictional defects in the proceedings." *United States v. Ormsby,* 252 F.3d 844, 848 (6th Cir.2001).

■■■■ The Court's inquiry is limited to whether the plea was "counseled and voluntary." *Broce* 488 U.S. at 569, 109 S.Ct. 757. Because Petitioner was represented by counsel at his plea, he may only attack the voluntary and intelligent character of the guilty plea by showing that his attorney's advice was not within the range of competence demanded of attorneys in criminal cases. *Henderson,* 411 U.S. at 266, 93 S.Ct. 1602 (citing *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

■■■■ Petitioner stated at the plea that he was satisfied with his attorney's representation, and he currently is not complaining of his attorney's advice concerning the plea agreement. Moreover, it is not sufficient to "show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id.* at 267, 93 S.Ct. 1602.

■■■■ Even if Petitioner's claim were not foreclosed by his guilty plea, he has failed to allege that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). He risked being sentenced to two life sentences *without the possibility of parole* had he gone to trial and been convicted. Accordingly, Petitioner has not shown that he was prejudiced by the alleged deficiencies. Without a showing of deficient performance *and* prejudice, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## 2. *At Sentencing*

■■■■ Petitioner alleges that his trial attorney did not discuss the pre-sentence report with him, nor assert a plea of mercy or mitigating factors at sentencing. To prevail on this claim, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Id.*

■■■■ The proper standard for attorney performance is "reasonably effective assistance." *Id.* Petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. The prejudice prong requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. At least in a capital murder case, "[f]ailure to present mitigating evidence at sentencing constitutes ineffective assistance of counsel." *Skaggs v. Parker,* 235 F.3d 261, 269 (6th Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 322, 151 L.Ed.2d 241 (2001).

At the sentence proceeding in this case, Petitioner's attorney directed the trial court's attention to the pre-sentence report. The report included information on Petitioner's personal history, including the fact that his father died during the previous year. The report also included information on Petitioner's home and neighborhood, sporadic employment, limited education, and "special ed" classes. Petitioner's admission that he was a slow learner, his version of the crimes, his denial of guilt, and his denial of mental or emotional problems were also mentioned. The report noted Petitioner's adult criminal record and extensive juvenile record, which resulted in time spent at a training school and youth home.

Defense counsel stated that the report reflected what Petitioner had said in court.

In other words, Petitioner admitted his participation in the crimes, but he maintained that his companion stabbed the victim in one case and possessed the gun in the other case. *See* Tr. of Sentencing, at 2–3.

To summarize, mitigating evidence was placed before the trial court through defense counsel's comments and through the pre-sentence report. Therefore, Petitioner has not demonstrated that his trial attorney's performance was deficient and that the alleged deficiency prejudiced him. Accordingly, the state court's denial of relief was not contrary to, or an unreasonable application of, *Strickland,* and Petitioner is not entitled to habeas relief on the basis of his third claim. 28 U.S.C. § 2254(d).

### D. *The Assistance of Appellate Counsel*

■ Petitioner's fourth claim alleges ineffective assistance of appellate counsel. Petitioner contends that his appellate attorney should have raised Petitioner's first three claims in the appeal of right. For ineffective assistance of appellate counsel to rise to the level of a Sixth Amendment violation, counsel's performance must be deficient and the deficient performance must have prejudiced the appeal. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Carpenter v. Mohr,* 163 F.3d 938, 946 (6th Cir.1998), *reversed on other grounds sub nom. Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

■ Petitioner's first three claims lack merit. Therefore, Petitioner's appellate attorney was not ineffective for failing to raise those claims on direct appeal. Moreover, Petitioner had no absolute right to compel his attorney to make every non-frivolous argument on appeal. *Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (citing *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Tactical choices about which claims to raise on appeal "are properly left to the sound professional judgment of counsel. . . ." *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.1990).

### E. *"Cause and Prejudice" and "Actual Innocence"*

■ Petitioner's fifth and final "claim" is not a substantive claim. Instead, it is a rebuttal to an anticipated defense that Petitioner's claims are procedurally defaulted. Respondent, however, has not alleged that Petitioner's claims are procedurally defaulted, and the Court has not treated the claims as procedurally defaulted.[1] Therefore, Petitioner's fifth claim is moot. To the extent that Petitioner is asserting an independent claim of innocence, his claim has no merit. A "claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.' " *Schlup v. Delo,* 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).

### III. *Conclusion*

For all the reasons given above, the application for a writ of habeas corpus is **DENIED.** The Court **DECLINES** to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong. *Slack*

---

1. The Court is not required to raise *sua sponte* a procedural default argument. *Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997).

*v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).